UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                             :

DAEBO INTERNATIONAL SHIPPING CO., LTD.,     :

                                             :

                                Plaintiff,     :          12 Civ. 7960 (PAE)

                                               :

                          -v-               :          OPINION & ORDER

                                             :

AMERICAS BULK TRANSPORT LTD., et al.,      :

                                             :

                             Defendants.     :

                                             :

------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Daebo International Shipping Co., Ltd. ("Daebo International") seeks a declaratory

judgment that six entities,[1] referred to herein as the "Alter Ego Defendants," are the alter egos of

defendant Americas Bulk Transport Ltd. ("ABT").  In furtherance of its efforts to collect on an

arbitral award against ABT that, it alleges, runs in its favor, Daebo International seeks to

establish that the Alter Ego Defendants are co-liable with ABT.  However, in a separate opinion

issued today in a related case, *see* No. 12 Civ. 4750 (PAE), Dkt. 51, this Court has declined to

confirm the arbitral award in Daebo International's favor, because that award issued in the name

of a different, now-defunct entity, and this Court lacks the power to modify the award in the

manner requested.  Because that decision renders essentially useless, at least for the time being,

the declaratory judgment sought by Daebo International in this action, the Court declines to enter

a declaratory judgment in Daebo International's favor, and grants defendants' motion to dismiss

---

[1] These are: Americas Bulk Transport (BVI) Ltd.; Phoenix Bulk Carriers (US) RI Corp.; Phoenix
Bulk Carriers Ltd.; Phoenix Bulk Carriers (BVI) Ltd.; Allseas Logistics Bermuda Ltd.; and Bulk
Ocean Shipping Company (Bermuda) Ltd.

this case.  This ruling is without prejudice to Daebo International's right to refile in the event that

Daebo International obtains, through a proper forum, the relief it sought in the related case.

I.      **Background**[2]

Pursuant to a charter party dated January 15, 2008, a Korean company known as Daebo

Shipping Co., Ltd. ("Daebo Shipping") chartered the M/V Nicole to ABT, a company organized

under the laws of Liberia.  Compl. ¶¶ 4–5 & Ex. 2 (the "Award").  A dispute arose between the

parties, wherein Daebo Shipping asserted a claim for $306,234 against ABT, and ABT asserted a

counterclaim for $729,819 against Daebo Shipping.  Award at 2.  As agreed in the charter, the

parties submitted their dispute to arbitration in London.  *Id.*  On January 5, 2010—after the

commencement of arbitration but before the panel's Award was issued—Daebo Shipping

merged with another Korean company, Daebo International.  Compl. ¶ 4 & Ex. 1.  On March 13,

2012, the London arbitral panel issued its award, granting Daebo Shipping's claim for $306,234,

plus interest and costs, and denying ABT's counterclaim.  *Id.* at 3; Compl. ¶¶ 19–23.  Daebo

Shipping, not Daebo International, was named as the recipient of the Award.

In a separate action before this Court, Daebo International sought to confirm and enforce

the Award against ABT.  In that action, Daebo International initially sought a declaratory

judgment that the Alter Ego Defendants are indeed the alter egos of ABT and therefore also

liable for the Award.  *See* No. 12 Civ. 4750, Dkt. 4.  However, after defendants moved to dismiss

the claims against the Alter Ego Defendants in that action, Daebo International withdrew its

claims against the Alter Ego Defendants (though not ABT), *see* No. 12 Civ. 4750, Dkt. 19, at 7,

and, on October 25, 2012, filed this case as a related action.  Dkt. 1.  Daebo International's

---

[2] The Court's account of the facts is derived from the Complaint, Dkt. 1, and the exhibits
attached thereto.

Complaint alleges that each of the six Alter Ego Defendants is an alter ego of ABT, *see* Compl. ¶¶ 24–77, and is therefore co-liable for the Award.

On December 11, 2012, defendants moved to dismiss the Complaint. Dkt. 10–13. On December 13, 2012, the Court issued an Order stating its initial view that, because Daebo International had not yet demonstrated any rights in the Award, this case might not be ripe for adjudication. Dkt. 14. However, the Court gave Daebo International the opportunity to oppose defendants' motion, *see id.*, and on December 26, 2012, Daebo International filed an opposition, Dkt. 15–18, addressing, *inter alia*, the ripeness argument identified by the Court. On January 4, 2013, defendants filed a reply. Dkt. 19.

In the related action, in an opinion issued today, the Court granted ABT's motion for summary judgment and dismissed Daebo International's petition to confirm the Award, reasoning that Daebo International, having not been a party to the Award, was seeking a modification of the arbitral panel's decision that was beyond this Court's power to grant in a confirmation proceeding. *See* No. 12 Civ. 4750, Dkt. 51. The proper forum for Daebo International's requested relief, the Court held, was England. *Id.*

## II.    Discussion

Defendants move to dismiss the Complaint on two primary grounds.[3]  First, they argue that Daebo International's request for a declaratory judgment is not ripe, because Daebo

---

[3] Defendants initially cast their motion as a motion to dismiss or, in the alternative, to convert the motion under Federal Rule of Civil Procedure 12(d) to a motion for summary judgment. The documents submitted by defendants that exceed the scope of the pleadings, such as declarations of Korean attorneys regarding issues of Korean law, *see* Dkt. 11, are relevant only to defendants' argument that Daebo International lacks any rights in the underlying Award. After the Court instructed the parties to direct their briefing on that question to the related case, *see* No. 12 Civ. 4750, Dkt. 26, at 4, the parties limited their briefing on this motion to the two grounds for dismissal discussed herein, *see* Pl. Br. 10; Def. Reply. Br. 5–6. Accordingly, the Court treats this motion as a motion to dismiss, and limits its review to the pleadings.

International has yet to establish any rights in the Award and therefore no case or controversy exists.  *See* Def. Br. 17–19; Def. Reply Br. 2–5.  Second, they argue that this Court lacks subject matter jurisdiction, because the Declaratory Judgment Act does not provide an independent basis for jurisdiction.  *See* Def. Br. 19–20; Def. Reply Br. 1–2.  Daebo International disagrees on both counts.  It argues (1) that a ripe controversy exists, because the parties disagree whether the Alter Ego Defendants are co-liable for the Award, *see* Pl. Br. 6–10; and (2) that this Court has subject matter jurisdiction, because the requested declaratory judgment relates to an underlying dispute sounding in admiralty, *see* Pl. Br. 5–6.  Although defendants' arguments are both substantial, the Court need not resolve them here:  Having granted summary judgment for ABT in the related action, the Court exercises its discretion to decline to issue a declaratory judgment in this case, because no useful purpose would be served at this juncture by a declaratory judgment regarding the co-liability of the Alter Ego Defendants on an award which Daebo International may, or may not, have a right to enforce against ABT.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  As Daebo International acknowledges, *see* Pl. Br. 8, a district court's decision to issue a declaratory judgment is discretionary:  "The Declaratory Judgment Act provides that a court '*may* declare the rights and other legal relations of any interested party,' not that it *must* do so."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 136 (2009) (emphases in original) (citation omitted); *accord Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005) ("The Declaratory Judgment Act, by its express terms, vests a district court with discretion to exercise jurisdiction over a declaratory action."); *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359

(2d Cir. 2003) ("Courts have consistently interpreted this permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear.").  The Declaratory Judgment Act "has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'"  *MedImmune*, 548 U.S. at 136 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).

To guide the exercise of discretion in Declaratory Judgment Act cases, the Second Circuit has "articulated a simple test that asks (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  *Dow Jones*, 346 F.3d at 359 (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)).  "[I]f either of these objectives can be achieved the action should be entertained and the failure to do so is error."  *Broadview*, 417 F.2d at 1001; *accord Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 562 (2d Cir. 1991).  The Second Circuit has also identified several other relevant factors, such as "[3] whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; [4] whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and [5] whether there is a better or more effective remedy."  *Dow Jones*, 346 F.3d at 359–60 (citations omitted); *accord Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 104 (2d Cir. 2012); *N.Y. Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006).

Here, these factors weigh in favor of declining to exercise jurisdiction.  First, a judgment that the Alter Ego Defendants are the alter egos of ABT is of no value to Daebo International without a judgment—which Daebo International has not yet obtained—that ABT itself is liable

5

to Daebo International for the Award.  Thus, it would not *usefully* clarify the legal issues involved.  Second, such a judgment would not finalize the controversy or provide the parties with relief from legal uncertainty of any consequence.  This is not a case in which a plaintiff is threatened with some legal liability and seeks clarification of the legality of his conduct lest he be forced to "bet the farm, so to speak, by taking the violative action."  *MedImmune*, 549 U.S. at 129.[4]  Quite the contrary, Daebo International is the party seeking to assert liability here.  But until Daebo International establishes the threshold question of ABT's liability, a judgment on the ancillary question of alter ego liability will not finalize the controversy.

The third factor, concerning "procedural fencing," weighs in favor of exercising jurisdiction, because there is no reason to suspect Daebo International of forum-shopping here. Similarly, the specific question presented here—alter ego liability—is not before any foreign court and therefore its resolution would not create friction with another sovereign.  On the other hand, this Court based its denial of Daebo International's petition to confirm the Award in part on the premise that the petition is more appropriately brought in England.  Having directed Daebo International elsewhere for its primary request, it would be incongruous to nevertheless retain jurisdiction over its related request, especially considering this forum's minimal interest in the litigation:  Daebo International, ABT, and five of the six Alter Ego Defendants are organized under the laws of foreign countries (and the sixth is incorporated in Rhode Island).  *See* Compl. ¶¶ 4–11.  Finally, there is a better—or at least no worse, as far as Daebo International is concerned—remedy here.  The Court can decline to issue a declaratory judgment at this time, without prejudice to Daebo International's right to seek such relief if and when it confirms that it has the right to enforce the Award against ABT.

---

[4] This logic supports defendants' ripeness argument, as well.  *See generally MedImmune*, 549 U.S. at 126–37.

"By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. . . . In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. Here, such considerations counsel patience. Daebo International seeks to commence a lawsuit, which may be costly and labor-intensive for both parties, in pursuit of a declaratory judgment that may ultimately prove to be useless if Daebo International cannot enforce the Award against ABT. To grant declaratory relief now would put the cart before the horse. If Daebo International is able to enforce the Award against ABT, it is at liberty to renew this action.

## CONCLUSION

Defendants' motion to dismiss is granted, without prejudice to Daebo International's ability to refile this case in the event that it obtains confirmation of the Award in its favor. The Clerk of Court is directed to terminate the motion pending at docket number 10, and to close this case.

SO ORDERED.

Paul A. Engelmayer

PAUL A. ENGELMAYER
United States District Judge

Dated: May 17, 2013
       New York, New York